IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHARLETTA T. BOWEN, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-17-021-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
       Defendant. )

**OPINION AND ORDER**

Plaintiff Charletta T. Bowen (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 49 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a janitor. Claimant alleges an inability to work beginning December 31, 2011 due to limitations resulting from COPD, pain in the neck, shoulders, hips, knees, feet, and lumbar spine, anxiety, bipolar disorder, and depression.

**Procedural History**

On June 13, 2014, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 17, 2015, Administrative Law Judge ("ALJ") Sylke Merchan conducted an administrative hearing by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding from Oklahoma City, Oklahoma. On February 3, 2016, the ALJ entered an unfavorable decision. The Appeals Council denied review on December 16, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) ignoring probative medical evidence in the record; and (2) improperly weighing and rejecting the opinion of Claimant's treating physician.

**Evaluation of the Medical Evidence of Record**

In her decision, the ALJ found Claimant suffered from the severe impairments of COPD, asthma, arthralgias, generalized anxiety disorder, and bipolar disorder. (Tr. 21). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant would be limited to no climbing of ladders, ropes, or scaffolds; could engage in no more than occasional climbing of ramps or stairs, stooping, balancing, crouching, crawling, or kneeling; should avoid concentrated exposure to extreme temperatures, humidity, environmental and respiratory irritants as well as hazards; would perform no more than occasional overhead reaching but could perform frequent reaching, handling, and fingering; could perform simple, routine, repetitive tasks with no strict production requirements. The ALJ further determined Claimant could engage in simple work-related decision making and would be limited to few, if any, changes in work setting, only occasional contact with supervisors and co-workers but no public contact. (Tr. 23)

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of cleaner/polisher, press operator, and electronics worker, all of which the ALJ concluded existed in sufficient numbers in both the regional and

5

national economies. (Tr. 29). As a result, the ALJ concluded that Claimant was not under a disability since June 13, 2014, the date the application was filed. Id.

Claimant contends the ALJ failed to properly evaluate the totality of the probative evidence demonstrating disability contained in the medical record. Specifically, Claimant asserts that the ALJ ignored the treatment notes of Dr. Ahmer Hussain, her treating physician, which were adverse to the ALJ's findings of non-disability. The ALJ generally acknowledged that Claimant was seen for multiple conditions over a period encompassing July 26, 2012 through September 15, 2015. The ALJ noted records from Dr. Hussain from an examination on July 24, 2014 which indicated Claimant had a flat affect, was unable to afford anti-psychotic medication, and was unable to be around a lot of people. Claimant was found to also have tenderness of the lumbar spine with positive straight leg raising and decreased range of motion. The ALJ then noted that in an August 22, 2014 exam, Claimant was stable. (Tr. 26).

Other records from Dr. Hussain during the relevant period were not referenced by the ALJ. On June 19, 2014, Claimant was found to have bilateral tenderness in the feet and knees with decreased range of motion, positive straight leg raising bilaterally, positive Patrick's testing, as well as decreased breath sounds. (Tr. 282). The August 22, 2014 note was completed by who appears to be "Tudorza

6

Samplor, D.R.P." (sp) and not Dr. Hussain. (Tr. 314). The note is brief and the findings briefer still. The purpose for the visit was "RX Refill." Id.

A note completed by Dr. Hussain on October 16, 2014 indicated Claimant had decreased range of motion in the upper and lower extremities with lumbar tenderness with forward flexion with negative straight leg raising and positive Patrick's testing. (Tr. 310). On November 20, 2014, Claimant was found to have a slightly unsteady gait, flat affect, positive straight leg raising, and tenderness with forward flexion of her lumbar spine. (Tr. 339). On December 18, 2014, Claimant had decreased range of motion in her neck and tenderness with forward flexion of her lumbar spine. Her gait was "slow, steady, stooped." (Tr. 338).

On January 22, 2015, Dr. Hussain found Claimant to be "anxious appearing" with decreased breath sounds, barrel chested, and lumbar tenderness with forward flexion. (Tr. 337). On February 19, 2015, Claimant had decreased back flexion and winced with movement of her arms above her shoulders. (Tr. 336). On March 19, 2015, Claimant experienced pain with movement and bending. She reported pain with increased movement of her shoulders. She also demonstrated diminished lung sounds in all fields and clear. On April 16, 2015, Claimant was found to have a depressed affect, diminished lung sounds in all fields, and complaints of pain with bending and

7

stooping.  Back and joint pain was slightly increased.  (Tr. 334).
On May 21, 2015, Dr. Hussain examined Claimant to find that she had lumbar tenderness with forward flexion, positive Patrick's testing, positive straight leg raising, steady but stooped gait, and flat affect.  (Tr. 333).

On June 18, 2015, Claimant again consistently showed lumbar tenderness with forward flexion, positive straight leg raising, positive Patrick's testing, and decreased lumbar extension range of motion.  Her gait was steady and affect normal.  (Tr. 332).  On July 16, 2015, Claimant had a flat affect, diminished breath sounds in her lower lobes, non-productive cough, lumbar tenderness with forward flexion, positive Patrick's testing, and positive straight leg raising.  (Tr. 331).

The ALJ failed to expressly consider all of the medical findings which did not support a finding of non-disability.  An ALJ is required to consider all relevant evidence in the record.  Soc. Sec. R. 06-03p.  She is not, however, required to discuss every piece of evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  But it is equally well-established that an ALJ may not pick and choose among the medical reports, relying upon those portions that support a finding of non-disability while rejecting those that do not.  Hardman v. Barnhart, 362 F.3d 676,

681 (10th Cir. 2004). In this case, the ALJ implicitly rejected the portions of Dr. Hussain's treatment records which did not support a finding of non-disability by effectively ignoring them. On remand, the ALJ shall consider the totality of the medical findings and consider their effects upon the RFC.

**Evaluation and Consideration of the Treating Physician's Opinion**

Claimant also challenges the ALJ's rejection of her treating physician's opinion. On October 16, 2014, Dr. Hussain and Ms. Lena Burns, an advanced licensed practical nurse in Dr. Hussain's clinic, authored a medical source statement. They estimated that Claimant could frequently lift up to ten pounds, occasionally lift up to 20 pounds, occasionally carry up to 20 pounds, sit for up to two hours at one time and one hour in an eight hour workday and stand and walk for one hour at one time and in an eight hour workday. Claimant could never reach overhead, could occasionally otherwise reach, occasionally handle and push/pull, frequently finger and continuously feel. Dr. Hussain and Ms. Burns attributed the limitations to lumbago and shoulder osteoarthritis and degenerative joint disease which limited and decreased Claimant's mobility. Claimant could frequently operate foot controls bilaterally, but could never climb ladders or scaffolds, crouch, or crawl. She could occasionally climb stairs and ramps, balance, stoop, and kneel.

9

Claimant could never work in unprotected heights, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, and must work in quiet. The conditions which require these limitations are COPD and Claimant cannot handle changes in temperature or extreme temperatures. Noise increased Claimant's anxiety and bipolar symptoms. Claimant could engage in activities of daily living but would have "difficulty in any new situations". (Tr. 340-45).

Dr. Hussain and Ms. Burns also completed a medical source statement concerning Claimant's mental restrictions. They found She had mild limitations in a variety of work activities. (Tr. 347). However, they also found Claimant was markedly limited in the areas of interacting appropriately with supervisors, co-workers, and in responding appropriately to usual work situations and to changes in a routine work setting. By way of diagnostic explanation, Dr. Hussain and Ms. Burns stated that Claimant has been diagnosed with PTSD, bipolar disorder, anxiety and social disorder. She was also found to not interact appropriately in a social setting. Increased anxiety caused Claimant stress induced chest pain. (Tr. 348).

The ALJ did not give "much weight" to these opinions, concluding that

> although a treating relationship with the claimant exists, the severe restrictions proposed in their

> opinions are simply not supported by their own treatment records showing generally only mild abnormalities on examination and no referrals for specialized treatment, nor are they consistent with the medical evidence of record overall.

(Tr. 27).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

11

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's analysis of Dr. Hussain's and Ms. Burns' opinion is skeletal at best. Failing to accord a treating physician's opinion "much weight" gives this Court little foundation for the level of weight afforded the opinion. Moreover, as previously noted, the ALJ was sparse in her consideration of Dr. Hussain's treatment records and the findings supporting a level of RFC below that found in the

12

ALJ's decision. The bases expressly provided by the ALJ do not offer substantial support for her conclusions. The fact no referrals for specialized treatment were made was belied by the fact that Dr. Hussain repeatedly noted Claimant's financial incapacity precluded certain changes in medication. The ALJ did not discuss this information but merely drew speculative conclusions from the failure to refer. *See* Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004) quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). The contradiction with the "record overall" lends little substantive support for the ALJ's rejection since she does not explain the remainder of the "record overall" to which she refers. On remand, the ALJ shall properly evaluate Dr. Hussain's and Ms. Burns' opinion in light of the entirety of the treatment records and in accordance with the prevailing legal authorities.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

13

applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 24th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE